UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN WISE,

    Plaintiff,

v.

STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS, *et al.*,

    Defendants.

Case No. C05-5810 FDB/KLS

REPORT AND RECOMMENDATION

**NOTED FOR:**
**MAY 18, 2007**

    This civil rights action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4. Plaintiff is in the custody of the Department of Corrections (DOC) at the Clallam Bay Corrections Center (CBCC). (Dkt. #42, Exh. 1 at 1). Plaintiff was incarcerated at the Washington Corrections Center (WCC) and the Washington State Penitentiary (WSP) at the time of the events alleged in his Complaint. (Dkt. # 15 at 2). Plaintiff has filed a civil rights complaint under 42 U.S.C. § 1983, against the DOC, Carol Porter, Sheldon Weaver, Dean Mason, and Carla Schettle, claiming that his Eighth Amendment rights were violated when he was denied access to an outdoor yard while housed in the Intensive Management Unit at the WCC and later in the segregation unit at the WSP. Plaintiff also alleges that his First Amendment rights were violated when he was not allowed to send out pre-stamped

REPORT AND RECOMMENDATION- 1

envelopes for payment of a magazine. Plaintiff seeks declaratory relief, an injunction to move him out of state and damages for the cost of the pre-stamped envelopes that were seized from him.

Defendants have moved for summary judgment on the grounds that Plaintiff has failed to state a claim on which relief can be granted. (Dkt. # 42). Defendants further argue that even if the Court were to determine that Plaintiff's First Amendment rights were violated, there was a legitimate penological interest in limiting Plaintiff's ability to mail un-stamped envelopes and therefore, Plaintiff's claims are barred by the Eleventh Amendment. (*Id.*) Finally, Defendants argue that Plaintiff's request for injunctive relief is moot as he is no longer housed at WCC or WSP. (*Id.*).

## I. STATEMENT OF FACTS

The following facts are undisputed. Plaintiff was transferred to the WSP on December 11, 2003. (Dkt. # 42, Exh. 1, Attach. A at 2). While at WSP, Plaintiff was placed in segregation; although in different units. (*Id.*, Exh. 2). Plaintiff received numerous infractions while there, requiring up to 10 days of isolation and 20 days of segregation. (*Id.*, Exh. 1, Attach. A). Plaintiff could have been transferred to the general population unit at WSP; however, he continuously refused cell assignments to that unit. (*Id.*, Exh. 2). Plaintiff claims that he refused cell assignments because of the exposure to second-hand smoke. (Dkt. # 50 at 4-6; Dkt. # 51 at 3-4). Plaintiff was then transferred to Monroe Corrections Center on April 25, 2005, and then to WCC's IMU on May 26, 2005. (*Id.*, Exh. 1). When he arrived at WCC, Plaintiff stopped refusing cell assignments and was infraction free for nearly a year. (*Id.* at 12). Later that year, Plaintiff was again transferred to CBCC. (*Id.*).

**A.    DOC Policy Regarding Mailing Pre-Stamped Evelopes**

DOC policy does not allow offenders to mail non-cancelled postage stamps or cash or personal checks. (*Id.*, Exh. 3, Attach. A, DOC Policy Directive 450.100, Mail for Offenders). Inmates are not allowed to send pre-stamped envelopes out of the institution because the envelopes are used as currency and can be used to repay debts or for bribes. (*Id.*, Exh. 3). Using stamps as

REPORT AND RECOMMENDATION- 2

currency can be a way for inmates to try and circumvent DOC policy regarding sending money or checks out of the institution. (*Id.*). Pre-stamped envelopes are envelopes issued to indigent offenders for their mail. (*Id.*). Inmates are prohibited from using those envelopes as currency as it would be a misuse of state resources and this is not the intended purpose of those envelopes. *Id.* The envelopes are to be used to write to friends, family and counsel. *Id.*

Plaintiff alleges that "Tightwad" is not a magazine, but a distributor of non-pornographic "mainstream" magazines, which it will make available to prisoners at the cost of their "spare" stamps or twenty pre-stamped envelopes. (Dkt. 53 at 9). Plaintiff argues that his attempt to purchase the magazines was not in violation of any DOC policy and that Defendants' refusal to process his mail was a misapplication of DOC policy and served no legitimate penological purpose. (*Id.* at 10).

**B.     Yard Access While Housed in IMU and Segregation**

   **1.     WCC Yard Access**

The WCC IMU Offender Handbook explains an inmate's access to a yard while he is housed in the IMU. (Dkt. 42, Exh. 3, Attach. B at 2). Specifically, an inmate may have one hour of recreation on Sundays, Tuesdays, Thursdays, Fridays and Saturdays. (*Id.*). The inmate must affirmatively state whether he wished to use the yard on the days offered. (*Id.*). Inmates who do not offer a reply or are on isolation status are not allowed to use the yard. *Id.* The IMU at WCC has a total of six yards available for inmate use on a recreation day. (*Id.*, Exh. 3). Half of those yards are indoors, the other half are outdoors. (*Id.*). The outdoor yards are roughly 30' x 60'. (*Id.*). The outdoor yards are partially covered so an inmate can use the phone and be protected from the rain. Otherwise, the yard is outdoors. (*Id.*).

   **2.     WSP Segregation Yard Access**

Segregation is an entirely separate unit at WSP that has higher security than the Intensive Management Unit. (*Id.*, Exh. 2). There are very strict security requirements for inmates housed in the Segregation Unit. (*Id.*). While housed at WSP in segregation, an inmate is allowed to access a

REPORT AND RECOMMENDATION- 3

yard area for one hour a day, five days a week. (*Id*.). WSP's Segregation Unit has indoor and outdoor yards depending on the unit the inmate is on. (*Id*.). Unit 1 at WSP has four tiers and each tier has three sections. (*Id*.). Each of those sections has an indoor yard that an individual can use during his recreation time. (*Id*.). The yards are divided by a chain link fence. (*Id*.). Inmates housed on units with outdoor yards are permitted to use the outdoor yard three times a week and the indoor yard two times a week. (*Id*.).

The Plaintiff was housed on Unit 1 for a fraction of the time he was in the Segregation Unit at WSP. (*Id*.). He was on Unit 1 from April 6, 2004 through June 17, 2004, for refusing to go to a general population unit and a different cell assignment. (*Id*.). He was transferred to Unit 4 for a brief period, but was placed back on Unit 1 on November 3, 2004, for refusing cell assignments to general population. (*Id*.). He was released back to Unit 4 on February 13, 2005; he did not return to Unit 1 for the remainder of his stay at WSP. (*Id*.).

While at WSP, the Plaintiff was provided with 54 opportunities for indoor yard time and he refused that 26 times. (*Id*.). He was provided with 20 opportunities to use the outdoor yard time and refused that 6 times. (*Id*.). DOC documents show many more offers for yard time; however, those documents do not specify whether those were offers for the indoor yard or the outdoor yard. (*Id*.). Specifically, Plaintiff was provided with 98 opportunities to use a yard and he refused 47 times. (*Id*).

Plaintiff was also placed in isolation a number of times while housed in segregation and he was not allowed to use the yard at all during those times. (*Id*.). He was in isolation from April 14, 2004, through April 22, 2004; from April 27, 2004, through May 5, 2004; from July 21, 2004, through July 30, 2004; from August 21, 2004, through August 28, 2004; from September 15, 2004, through September 25, 2004; November 10, 2004, through November 20, 2004; from December 23, 2004, through January 1, 2005; from January 19, 2005, through January 28, 2005; February 16, 2005, through February 25, 2005; from March 2, 2005, through March 10, 2005; from March 30, 2005, through April 9, 2005, and from April 10, 2005, through April 23, 2005. (*Id*.). Plaintiff repeatedly refused a cell assignment to another unit and would not provide the proper information

REPORT AND RECOMMENDATION- 4

1 needed to allow him to stay in segregation; therefore, he was infracted each time he refused a cell
2 assignment to another unit and received 10 days of segregation. (*Id*.).

## II.  DISCUSSION

**A.     Standard of Review**

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Service Inc.*, 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. *Id.*

**B.     Defendant DOC Has Waived Its Insufficiency Of Process Argument**

Defendants contend that Plaintiff never properly perfected service on the DOC, within the

REPORT AND RECOMMENDATION- 5

one hundred and twenty days dictated by Fed. R. Civ. P. 4(m).  Therefore, Defendants argue that this Court does not have personal jurisdiction over that Defendant and it should be dismissed without prejudice.

A defendant must be served in accordance with Fed. R. Civ. P. 4 or there is no personal jurisdiction over that defendant. *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982).

Plaintiff's Complaint was filed on April 10, 2006.  (Dkt. # 15).  An Order Directing Service by the U.S. Marshal was issued on May 4, 2006.  (Dkt. # 16).  The docket does not reflect a return of service or waiver of service for the DOC.   On June 7, 2006, the Attorney General entered an appearance on behalf of the DOC.  (Dkt. # 23).  The entry of appearance was without waiver or objection to the sufficiency of service of process.  (*Id*).  On July 7, 2006, the DOC filed its Answer. (Dkt. # 29).  The DOC did not include the defense of insufficiency of service in its Answer.  (*Id*.). Defendant filed no 12(b) motions challenging the insufficiency of service.

Rule 12(h) of the Federal Rules of Civil Procedure clearly states:

> . . . defense of lack of jurisdiction over the person . . . is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading . . . .

Because Defendant DOC answered Plaintiff's Complaint without raising the defense of improper service and is raising it for the first time at summary judgment, it has waived the defense. Accordingly, the undersigned recommends that its motion to dismiss on the grounds of sufficiency of service be denied.

**C.      Plaintiff Has Failed To State A Claim Under The First or Eighth Amendment**

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977); *Flores v. Pierce,* 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 975 (1980). When a plaintiff

REPORT AND RECOMMENDATION- 6

fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344 (1986).

In order to state a civil rights claim, a plaintiff must set forth the specific factual basis upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982). Rather, each defendant must have personally participated in the acts alleged. *Id.* Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss. *Peña v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

### 1   Plaintiff has Failed to Show That Refusing To Mail Pre-Stamped Envelopes is a Violation of His First Amendment Rights

Plaintiff claims that the refusal to mail his pre-stamped envelopes violated his First Amendment rights. A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). A regulation that impinges on First Amendment rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In determining whether a prison regulation is reasonably related to a legitimate penological interest, the court should consider the following factors: (1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison records generally ; and (4) whether the prisoner has identified easy alternatives to the

REPORT AND RECOMMENDATION- 7

regulation which could be implemented at a minimal cost to legitimate penological interests. *See Shaw v. Murphy*, 532 U.S. 223, 229 (2001); *Turner*, 482 U.S. at 89-91; *Morrison v. Hall*, 261 F.3d 896, 901 (9th Cir. 2001).

A prisoner's right to receive publications from outside the prison should be analyzed in light of the *Turner* factors. *See Morrison*, 261 F.3d at 901-902. Courts have consistently upheld prison regulations prohibiting inmates from receiving catalogs and non-subscription bulk mail. Recently, in *Dixon v. Kirby,* 210 F. Supp. 2d 792, 799 (S.D. W.V. 2002), *aff'd,* 48 Fed. Appx. 93 (4th Cir. 2002), the court found a prison regulation prohibiting catalogs was constitutional. *See Smith v. Maschner,* 899 F.2d 940, 944 (10th Cir. 1990) (holding that a complaint regarding undelivered catalogs fails to raise an issue of constitutional magnitude). The Ninth Circuit has similarly held that security interests and increased administrative costs to the prison (for alternative mail sorting procedures requested by the inmate) justify prison regulations regarding efficient processing of inmate mail. *O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1995); *see also Allen v. Wood*, 970 F. Supp. 824, 832 (1997) (Washington State Penitentiary's prison regulation restricting catalogs is constitutional).

In this case, the undisputed facts reflect that the DOC did not prohibit Plaintiff from receiving magazines distributed by "Tightwad." Rather, Plaintiff was prohibited from sending stamps that have not been processed pursuant to DOC's policy, which forbids all inmates from sending unprocessed stamps. DOC's policy does not limit the *content* of any publication that may be received by an inmate. There is no evidence that Plaintiff was unable to receive the magazines distributed by "Tightwad" through other sources or other means. Although Plaintiff has alleged that the only way to receive these publications is by sending the pre-stamped envelopes, Plaintiff has provided no summary judgment evidence to support this allegation.

Viewing the evidence in the light most favorable to the Plaintiff, the undisputed facts reflect that Plaintiff was not denied the publications based on any specific content, nor was he forbidden from contacting the publishers. Plaintiff was forbidden from sending the equivalent of "currency" out of the institution. Thus, Plaintiff has failed to show that there was a denial of his First

REPORT AND RECOMMENDATION- 8

Amendment rights. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted on this claim.

### 2. Defendants' Actions Were Reasonably Related to a Legitimate Penological Interests

Defendants argue that even if the Court were to find that prohibiting Plaintiff from mailing the pre-stamped envelopes violated some right, that prohibition was reasonably related to the legitimate penological interest of limiting inmates use of such materials as currency.

A prison may adopt regulations and take actions that infringe on an inmate's constitutional rights if they are "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89; *O'Lone v. The Estate of Shabazz*, 482 U.S. 342 (1987). Such a standard is necessary because "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.*

Defendants argue that the DOC has a legitimate penological interest in prohibiting an inmate from mailing pre-stamped envelopes or un-cancelled stamps. Often offenders use the pre-stamped envelopes for currency. (Dkt. # 42, Exh. 3). Allowing inmates to trade un-cancelled stamps and pre-stamped envelopes as currency can create a threat to the safety and security of the institution. Inmates can use the stamps to trade for other contraband items, for bribery purposes or other security risks (*Id*.). The stamps are issued by DOC to indigent inmates so they may have the opportunity to write to their friends and families or legal counsel. (*Id*.). DOC limits an inmate's ability to send stamps in the mail because it can cause a liability issue for DOC should a disagreement arise over whether the stamps were sent. (*Id*.).

As the Court has found that Defendants' removal of the pre-stamped envelopes was not an infringement of Plaintiff's First Amendment rights, it is not necessary for the Court to determine whether such deprivation was reasonably related to the legitimate penological interests of safety and security.

REPORT AND RECOMMENDATION- 9

### 3. Plaintiff Has Failed to Show that his Eighth Amendment Rights Were Violated

Plaintiff claims that he was not provided any outdoor yard time while housed at WSP and he was provided alternating days in the outdoor yard at WCC, in violation of his Eighth Amendment right to be free of cruel and unusual punishment.

It is only "'the unnecessary and wanton infliction of pain' . . . [which] constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers,* 475 U.S. 312, 319 (1986), citing *Ingram v. Wright,* 430 U.S. 651 (1977). "[I]f a particular condition or restriction . . . is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" 441 U.S. at 539. "[T]he effective management of a detention facility . . . is a valid objective that may justify imposition of conditions" that are discomforting and restrictive, without the inference that such restrictions are intended as punishment. *Id.* at 540.

Moreover, "[it] is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). A temporary condition, with no medical effects, does not rise to the level of an Eighth Amendment claim. *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997); *Ferguson v. Cape Girardeau County,* 88 F.3d 647, 650 (8th Cir. 1996).

Inmates do have a constitutional right to recreation or exercise. *LeMaire v. Maass*, 12 F.3d. 1444, 1457 (9th Cir. 1993). Prison officials cannot deny an inmate access to an outside yard for an extended period of time. *Id.* Prison officials may, however, limit an inmate's access to an outside yard if that inmate's conduct precluded that access. *Id.* at 1458. If an inmate is a threat to the safety of staff, other offenders or himself or the overall security of the institution, yard access may be denied. *Id.* Courts have not set a bright line rule stating exactly how long an inmate can be denied access to an outdoor yard before his constitutional rights are violated. In *Spain v. Procunier,* the Ninth Circuit found that a four year denial of outdoor yard privileges was a violation of the Eighth Amendment. 600 F.2d 189 (9th Cir. 1979). That same Court also found that yard denial for over a

REPORT AND RECOMMENDATION- 10

1  year was also a constitutional violation. *Toussaint v. Yockey*, 722 F. 2d 1490, 1493 (9th Cir. 1984).
2  Regardless of the duration, the Ninth Circuit has found that limiting an inmate's access to outdoor
3  yard time is a reasonable exercise of prison management to curtail or punish inmate behavior.
4  *LeMaire*, 12 F. 3d at 1458. It may be warranted, given an inmate's proclivity to create a security
5  threat. *Id.*

6  Plaintiff claims that he was not provided any outdoor yard time while housed at WSP and he
7  was provided alternating days in the outdoor yard at WCC.   The uncontroverted evidence reflects
8  that Plaintiff was provided alternating days in an enclosed yard and an outdoor yard while housed at
9  WCC.  (Dkt. # 42, Exh. 2).  Plaintiff was allowed to access an indoor yard five times per week for
10 one hour while at WSP.  (*Id*.).  He was provided with 54 opportunities for indoor yard time and he
11 refused that 26 times.  (*Id*.).  He was provided with 20 opportunities to use the outdoor yard time
12 and he refused that 6 times.  (*Id*.).  Plaintiff was not permitted to use the yard at all while in isolation;
13 however that was for no longer than 10 days at a time and was part of Plaintiff's punishment for his
14 behavior on the unit.  (*Id*.).   In addition, the evidence reflects that Plaintiff refused cell assignments
15 to other areas of the institution that would have afforded him greater access to an outside yard.
16 (*Id*.).

17 In response to Defendants' motion for summary judgment, Plaintiff raises several arguments
18 and claims several disputed issues of fact.  Plaintiff claims that Defendants retaliated against him
19 when they would not allow him to access the outdoor yard.  Plaintiff also argues that his infraction
20 hearings or resulting punishment was improper.  Plaintiff also claims that he refused cell assignments
21 because of exposure to second-hand smoke.  Viewing the evidence in the light most favorable to
22 Plaintiff, it is clear that Plaintiff has not shown that Defendants violated his Eighth Amendment right
23 to be free from cruel and unusual punishment.   For the reasons set forth below, the undersigned
24 recommends that his claim be dismissed.

26 **3(a).    Plaintiff's Claim of Retaliation Is Without Merit**
27 Plaintiff argues that Defendants retaliated against him when they would not allow him to
28 REPORT AND RECOMMENDATION- 11

access the outdoor yard.  There is one reference of retaliation in Plaintiff's Complaint.  (Dkt. # 15 at 12).  In order to establish a retaliation claim, Plaintiff must show that he was retaliated against for exercising constitutional rights and that the retaliatory action did not advance a legitimate penological goal.  *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). Plaintiff has the burden of showing that the retaliation was the substantial or motivating factor behind the conduct of the prison official. *Mt. Health City Bd. Of Educ v. Doyle*, 429 U.S. 274, 285-87 (1976). Additionally, "plaintiff must allege that the defendant's actions caused him some injury." *Resnick v. Hayes*, 200 F. 3d 641, 646 (9th Cir. 2000).

Plaintiff provides no summary judgment evidence of retaliation, but relies solely on broad allegations that he was retaliated against for complaining about second-hand smoke. (Dkt. # 51, 53).  There are no factual allegations and no corresponding summary judgment evidence showing how the retaliation occurred, which Defendant personally participated in the retaliation, and how Plaintiff was harmed by any Defendant by a retaliatory act.  In addition, Plaintiff has not shown that any of his constitutional rights were violated when he was denied access to the outside yard.

Moreover, to the extent Plaintiff argues that his infraction hearings and/or punishment was improper, this is not the proper venue to bring such an action.  A prisoner may not bring a 42 U.S.C. § 1983 claim for damages if a judgment in his favor would "necessarily imply the invalidity of the punishment imposed" at a prison diciplinary hearing.  *Edwards v. Balisok*, 520 U.S. 641, 649 (1997); *Heck v. Hunphries*, 512 U.S. 477, 487 (1997).

**3(b). Plaintiff's Claim That Placement in Segregation Violated The Eighth Amendment Is Without Merit**

Finally, Plaintiff's argument that his placement in segregation was improper does not rise to a violation of the Eighth Amendment.  Prison disciplinary hearings must be upheld by reviewing courts if supported by "some" or "any" evidence. *Superintendent v. Hill*, 472 U.S. 445 (1985), *In re Reismiller*, 678 P.2d 323 (1984).

The refusal to accept a transfer is an infractable offense as that refusal equates to refusing a

REPORT AND RECOMMENDATION- 12

cell assignment. WAC 137-25-030 (Category C – Level 1) 724).  Plaintiff has not demonstrated that any one of the infractions he has received was not supported by evidence or that his placement in disciplinary segregation violates his constitutional rights. An inmate's constitutional rights are implicated only when he faces restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 486 (1995).  Segregation generally falls within the expected parameters of the sentence imposed by a court of law. *Sandin*, 515 U.S. at 484-486 (imposition of disciplinary segregation does not amount to atypical and significant hardship); *Wolff v. McDonnell*, 418 U.S. 539, 571-72 n.9 (1974) (rights afforded inmates for facing loss of good-time not necessarily required for lesser penalties); *see also Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993) (Washington inmates have no protected liberty interest to be free from administrative segregation).

Thus, Plaintiff's argument that his disciplinary segregation is a violation of his constitutional rights is without merit.

### 3( c).  Plaintiff's Stated Issues of Fact Are Not Material to The Case

Although Plaintiff argues that there are factual issues in dispute, the factual issues he raises are not material to the determination of the case.  For example, Plaintiff raises, for the first time, in response to Defendants' motion for summary judgment, the argument that his infraction hearings and punishment may have been improper because he refused cell assignments based on his desire to be placed in an environment free of second-hand smoke. (This allegation differs from the one stated in Plaintiff's Complaint, which states the reason for Plaintiff's refusal to accept a transfer to Cell Block 8 involved threats by fellow inmates. *See* Dkt. # 25 at 8).

Although the issue may be disputed, it is not material to whether Plaintiff's constitutional rights have been violated.  Moreover, the issue should have been raised at the time of Plaintiff's infraction hearing or if Plaintiff felt that he was not given a fair hearing, in a personal restraint petition.  In any event, Plaintiff has not met his burden here.

As Plaintiff has failed to establish each element of his claim with "significant probative

REPORT AND RECOMMENDATION- 13

evidence tending to support the complaint," the undersigned recommends that Defendants' motion for summary judgment be granted.

**D.     The DOC's Is Not Entitled to Summary Judgment Dismissal Based on Eleventh Amendment Sovereign Immunity**

Defendant DOC urges that Plaintiff's claims seeking damages against a state agency are essentially a claim against a state, which are barred by the Eleventh Amendment. The Eleventh Amendment to the United States Constitution bars citizens from bringing lawsuits against states in federal courts. *See Welch v. Texas Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). Absent an Act of Congress or state action expressly waiving Eleventh Amendment immunity, the Eleventh Amendment has consistently been applied to bar suits for damages against the state in federal court.

However, the Eleventh Amendment does not bar a federal court action seeking prospective or injunctive relief against a state or its officials acting in their official capacities. *Pena v. Gardner*, 976 F.2d 469, 473 n. 5 (9th Cir. 1992) (citing *Edelman v. Jordan*, 415 U.S. 651, 664 (1974). Plaintiff requests injunctive relief. (Dkt. # 15 at 20-21). Therefore, dismissal on Eleventh Amendment immunity grounds is not appropriate. However, and as is more fully discussed below, the undersigned recommends summary judgment dismissal be granted in Defendants' favor on the grounds that Plaintiff's request for injunctive relief is now moot.

**E.     Plaintiff's Request for Injunctive Relief is Moot**

Plaintiff requests an injunction directing Defendants to transfer him to an out-of-state facility to a state of Plaintiff's choosing; to relocate Plaintiff to the south end of WCC's IMU where he can be granted access to the outdoor yard five times per week; to re-issue Plaintiff twenty pre-stamped 37 cent envelopes, and to rescind the infraction previously imposed on him for previously attempting to send the pre-stamped envelopes. (Dkt. # 15 at 20-21).

REPORT AND RECOMMENDATION- 14

Defendants argue that Plaintiff lacks standing to pursue his claim for injunctive relief because he is no longer housed at WCC or WSP.[1]

Generally, a prisoner's release or transfer from a prison will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action. *Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Johnson v. Moore,* 948 F.2d 517, 519 (9th Cir. 1991); *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986). To secure injunctive relief, a plaintiff must demonstrate "a very significant possibility" that future harm will ensue. *Nelsen v. King County,* 895 F.2d 1248, 1250 (9th Cir. 1990). The burden of showing a likelihood of a recurrence of harm is "firmly on the plaintiff." *Id.* at 1251. The courts have consistently found a lack of standing where the litigant's claim relies upon a chain of speculative contingencies. *Id.* at 1252.

Plaintiff lacks standing to pursue his claim for a transfer to "the south end of WCC's IMU," because he is no longer housed at the WCC or the WSP, and his return to that facility is entirely speculative. Because Plaintiff's action has not been certified as a class action, his transfer to a different prison renders his claim for injunctive relief moot.

Moreover, Plaintiff has no constitutional right to placement at a particular institution. *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985). Thus, his request to be transferred out-of-state to a facility of his choosing is without legal merit.

Finally, and as discussed above, Plaintiff has no constitutional right to re-issuance of the 20 pre-stamped envelopes. Therefore, Plaintiff cannot satisfy the requirements for obtaining injunctive relief.

Viewing the facts in the light most favorable to the Plaintiff, the undersigned concludes that summary judgment in favor of Defendants on Plaintiff's claims for injunctive relief is appropriate.

---

[1] Defendants also argue that the majority of the individuals the Plaintiff has named as defendants either do not work at the institution they worked at when the claims arose or they no longer work for the DOC. However, Defendants have provided no summary judgment evidence to support this assertion.

REPORT AND RECOMMENDATION- 15

**F.      Qualified Immunity of Federal Officials**

The Defendants urge that they are, in any event, entitled to qualified immunity from the claims of Plaintiff.   As the Court has determined that Plaintiff has failed to allege a deprivation of an actual constitutional right, the issue of qualified immunity need not be reached.  *See Conn v. Gabbert*, 526 U.S. 286, 290 (1999).

### III. CONCLUSION

For the reasons stated above the court should **GRANT** Defendants' motion for summary judgment and dismiss Plaintiff's claims with prejudice.  A proposed order accompanies this Report and Recommendation.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 18, 2007**, as noted in the caption.

DATED this  20th day of April, 2007.

/s/ Karen L. Strombom
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 16